## (C.D. 4072)

### Ernesto F. Rodriguez, Inc. v. United States

United States Customs Court, Third Division

(Decided September 3, 1970)

*Penagaricano & Lloveras* (*Juan T. Penagaricano, Jr.*, of counsel) for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Harold L. Grossman* and *Robert E. Burke*, trial attorneys), for the defendant.

Before Richardson, Landis, and Rosenstein, Judges

Richardson, Judge: This case involves the question of whether an importer can recover under protest duties paid on some 2,280 alarm clocks imported into Puerto Rico from Hong Kong as part of a total shipment of 5,040 clocks packed in 210* cartons, 24 clocks to a carton, upon exportation of same from Puerto Rico outside of customs custody. Jose Ernesto Rodriguez, president of Ernesto F. Rodriguez, Inc., the importer, testified, among other things, that 209 cartons of these clocks were received at his company's warehouse, that he personally checked and examined them and found that each carton was marked with his marks and a number corresponding with his order number, that after they left his warehouse he saw them at the pier where they were going to be shipped to Venezuela and Belgium, and that he knows that these clocks were the same ones he received from Hong Kong because they were the only clocks he had in his warehouse at the time.

The official papers, received in evidence at the trial, indicate that landing certificates and bills of lading covering 95 cartons of clocks

---

*The official papers indicate that only 209 cartons were released from customs custody, and that 1 carton was manifested but was not found at that time.

destined for Venezuela and Belgium were filed with the district director by the broker Miguel A. Vega. The witness Rodriguez testified that the broker handled the actual exportation of the clocks, first, 114 cartons in or about June, 1965, under customs supervision for which he ultimately received duty refunds, and then, between June and October of 1965 the remaining 95 cartons in issue here. When the trial judge said to plaintiffs' attorney, "We are assuming that you have proved [the actual exportation of the clocks in issue]", and inquired if the requirements of customs regulations had been complied with in the exportation, plaintiff's attorney conceded that these clocks were not exported under strict customs regulations (R. 51).

The involved clocks were classified in liquidation under item 715.25 of the Tariff Schedules of the United States as other clocks valued not over $1.10 each, not containing jewels at the duty rates of 27.5 cents each and 32.5 per centum ad valorem. Liquidation of the entry included a 10 per cent marking duty assessed pursuant to 19 U.S.C.A., section 1304(c) (section 304(c), Tariff Act of 1930, as amended). However, the entry was reliquidated pursuant to 19 U.S.C.A., section 1520(c)(1) (section 520(c)(1), Tariff Act of 1930, as amended) to delete the marking duty assessment. And the justification for reliquidation is contained in the request memorandum of P. R. Acevedo, assistant district director, dated June 13, 1967, which reads:

> Reliquidation of subject consumption entry is requested. Marking duties have been asessed [sic] under Sec. 304(c) which is not applicable. Movements were not marked with the manufacturer's or importer's name under Schedule 7, Part E, Headnote 4, TSUSA. All entry papers are attached.

Headnote 4 of part 2E of schedule 7 of the tariff schedules to which reference is made in the assistant district director's memorandum as aforesaid reads in relevant part:

> 4. Special Marking Requirements: Any movement . . . provided for in this subpart, whether imported separately or attached to an article provided for in this subpart, shall not be permitted to be entered unless conspicuously and indelibly marked by cutting, die-sinking, engraving, or stamping, as specified below:
>
>     *       *       *       *       *       *       *
>
> (b) Clock movements shall be marked on the most visible part of the front or back plate to show—
>
>     (i) the name of the country of manufacture
>     (ii) the name of the manufacturer or purchaser, and
>     (iii) the number of jewels, if any.

Although the movements at bar were never marked, it appears that the involved shipment of clocks was released from customs custody on

or after April 27, 1965, the date of the endorsement of the customs inspector on the permit on customs form 7501–A. And at that time the district director appears to have been aware of the requirements of headnote 4. The importer, by letter dated April 13, 1965, and addressed to the collector, had sought the release of the clocks from customs custody in time for Mother's Day sales. In reply to the importer's letter of April 13th, Acting Collector R. A. Torrens wrote under date of April 15, 1965, as follows:

Gentlemen:

Reference is made to your letter of April 13, 1965, requesting the release without further marking of an importation of clocks from Hong Kong entered under consumption entry No. 17091 dated April 7, 1965. As reported by the appraiser, each clock movement must be marked to show the name of the manufacturer or importer.

This office is unable to authorize the release of the clocks in view of the specific marking requirements of the law. Therefore, the clock movements must be marked in exact conformity with the requirements of Schedule 7, Part 2E, Headnote 4, Tariff Schedules of the United States, by cutting, die-sinking, engraving, or stamping.

If proper marking cannot be accomplished, the clocks must be exported or destroyed under customs supervision.

Sincerely yours,
R. A. Torrens
Acting Collector of Customs

cc Mr. Rafael Ferran Martinez
P.O. Box 2824
San Juan, P.R.

After the unmarked clock movements were released to the importer the record indicates that the Customs Bureau, for purposes of this shipment only, authorized the importer to mark the movements with the name of the manufacturer or importer by stamping with an acid-base ink when it developed that the importer claimed it could not afford to mark the movements in accordance with the requirements of headnote 4. And, apparently the clocks were then exported as aforesaid in lieu of marking the movements with an acid-base ink. But there is nothing in the record to show why the clocks were released from customs custody in the first place in view of the district director's awareness, prior to release, of the requirements of headnote 4 relative to marking of clock movements.

On this record plaintiff contends that it is entitled to a refund of the duties paid on the merchandise exported outside of customs custody because the merchandise was in fact exported. Defendant contends that plaintiff is not entitled to the claimed duty refund because the

merchandise was not exported within customs custody in accordance with the requirements of 19 U.S.C.A., section 1558(a)(2) (section 558(a)(2), Tariff Act of 1930, as amended), and customs regulations adopted pursuant thereto. Section 1558(a)(2) reads in relevant part:

(a) No remission, abatement, refund, or drawback of estimated or liquidated duty shall be allowed because of the exportation or destruction of any merchandise after its release from the custody of the Government, except in the following cases:

\* \* \* \* \* \* \*

(2) When prohibited articles have been regularly entered in good faith and are subsequently exported or destroyed pursuant to a law of the United States and under such regulations as the Secretary of the Treasury may prescribe;

Section 8.49 of the Customs Regulations reads in relevant part:

(b) If merchandise has been regularly entered or withdrawn for consumption in good faith and is thereafter found to be prohibited entry under any law of the United States, it may be exported under customs supervision in accordance with sections 18.25 and 18.26 with refund of any duties that have been paid. (See sec. 15.5.)

And section 18.25 of the Customs Regulations reads in relevant part:

(a) Except as otherwise provided for in secton 9.11(a), relating to exportation by mail . . . when merchandise which has been entered in good faith is found to be prohibited under any law of the United States, and such merchandise is to be exported directly without transportation to another port, an entry on customs Form 7512 shall be filed in quadruplicate. However, the collector may require an extra copy or copies to be furnished for use in connection with the delivery of the merchandise to the carrier named in the entry.

(b) An exportation bond on customs Form 7557, 7559, or other appropriate form shall be required with the entry, provided a consumption entry bond on customs Form 7551 or 7553 or other appropriate form was not previously given. (See also sec. 8.49.)

In addition to the foregoing statute and regulations, defendant also calls the court's attention to subsection (a) of section 11.11 of the Customs Regulations in support of its contention. Section 11.11(a) relates to disposition of articles not properly marked. However, a footnote reference in the text of this regulation indicates that the regulation is pegged to and implements the general marking provisions contained in 19 U.S.C.A., section 1304 (c) and (d) (section 304 (c) and (d), Tariff Act of 1930, as amended). And no question is presented here as to requirements of the general marking provisions of section 1304. The case involves only the special marking provisions of headnote 4, and cannot, therefore, be affected or controlled by statutory

or regulatory provisions relating to general marking requirements. *Holtzerman Chicago Store Co.* v. *United States*, 44 Treas. Dec. 380, T.D. 39927 (1923).

It will be readily observed that the other statutory and regulatory provisions relied upon by defendant herein are conditioned for their operation upon the premise that prohibited merchandise has been regularly entered in good faith.

The word "entered' 'as used in this context relates to the complete transaction of entering the merchandise and not merely to the single act of tendering to customs officials the *entry* document. *United States* v. *Mussman & Shafer, Inc.*, 40 CCPA 108, C.A.D. 506 (1953). Thus, the instant merchandise was not in *entered* status when the information came to the district director's attention that it was prohibited merchandise, i.e., merchandise which was not permitted to be entered pursuant to a law of the United States, namely, headnote 4 of part 2E of schedule 7 of the Tariff Schedules of the United States. And in the face of such knowledge it was the clear duty of the district director not to permit such merchandise to be entered, that is to say, released from customs custody. *Holtzerman Chicago Store Co.* v. *United States, supra.* Consequently, when the merchandise was released from customs custody and "entered", as it were, under these circumstances, such action on the part of customs officials was not in accordance with statutory requirements.

And by the same token when plaintiff became apprised of the special marking provisions which affected the entry of such merchandise it became its duty to comply with the law, i.e., either to have the movements marked as required, or to have them exported or destroyed while they were in customs custody. But as the record indicates, neither party herein appears to have performed its duty *vis-a-vis* the merchandise at bar after knowledge of the pertinent facts was communicated to them—with the result that the merchandise was released to plaintiff contrary to statutory requirements. And under such a state of affairs both parties herein look to section 1558(a)(2) as favoring its respective side of the issue—the plaintiff contending that the purpose of the law had been fulfilled with the exportation of the clocks, and the government contending that the exportation has not been in accordance with the letter of the law.

The requirements of section 1558(a)(2) and the regulations promulgated thereunder have not been complied with. Also, on the instant record we find that both parties are somewhat *in pari delicto* insofar as the improper release of the merchandise in question from customs custody is concerned. In a situation such as this the court will leave the parties where it finds them. When the parties to an action or transaction are *in pari delicto* as in this case, neither can secure

affirmative relief at law as well as in equity. *Furman v. Furman et al.*, 178 Misc. 582, 34 N.Y.S. 2d 699, 704 (1941). And in view of this determination it follows that the protest must be overruled without, however, affirming the decision of the district director.

Judgment will be entered herein accordingly.